BOBBIE R. BAILEY, State Bar No. 159663
bbailey@leaderberkon.com
STEPHANIE L. GASE (*pro hac vice*)
sgase@leaderberkon.com
DANIEL A. JOHNSON (*pro hac vice*)
djohnson@leaderberkon.com
LEADER BERKON COLAO & SILVERSTEIN LLP
550 South Hope Street, Suite 1850
Los Angeles, CA 90071
Telephone: (213) 234-1750
Facsimile:  (213) 234-1747

*Attorneys for Plaintiffs*
*Creative Intellects Inc. and Intellects Capital LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CREATIVE INTELLECTS INC. and INTELLECTS CAPITAL LLC, Individually and Derivatively on Behalf of Nominal Defendants ATLANTIC CROSS EQUIPMENT, LLC and A.X.E., LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICK HAYGOOD, ROBERT THOMPSON, TRACEY RENEE MCKINNEY, RESERVATION LAND MANAGEMENT (A PROFESSIONAL CORPORATION), and SABINE HOLDINGS, LLC,<br><br>Defendants,<br><br>and<br><br>ATLANTIC CROSS EQUIPMENT, LLC, and A.X.E., LLC,<br><br>Nominal Defendants. | Civil Action No. 2:21-cv-02670-RGK-AFM<br><br>**STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS** |

| | |
|---|---|
| PATRICK HAYGOOD, TRACEY RENEE MCKINNEY, RESERVATION LAND MANAGEMENT, ATLANTIC CROSS EQUIPMENT, LLC, AND A.X.E., LLC | |
| Counter-Claim Plaintiffs, | |
| vs. | |
| CREATIVE INTELLECTS INC. and INTELLECTS CAPITAL LLC, a limited liability company; HATEL BHAKTA, an individual person; MITESH SOLANKI, an individual person; ERIC TABARY, an individual person, | |
| Counter-Claim Defendants. | |

## 1. **Purpose**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules. Nothing in this order is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge.

## 2. **ESI Disclosures**

Within 30 days after the Court enters this ESI Order, each party shall disclose the following:

1. <u>Custodians.</u>  The name of the custodians most likely to have discoverable ESI in their possession, custody, or control.  Each custodian must be

identified by name, title, connection to the instant litigation, and the type of information in their control.

  2. <u>Non-Custodial Data Sources.</u> A list of known non-custodial data sources (e.g. shared drives, servers, etc.), if any, likely to contain discoverable ESI.

  3. <u>Third-Party Data Sources</u>. A list of known third-party data sources, if any, likely to contain discoverable ESI over which the parties have possession, custody, or control.

  4. <u>Inaccessible Data</u>. A list of known data sources, if any, likely to contain discoverable ESI (by type, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i). To the extent that any discoverable ESI was communicated or transferred through the use of ephemeral messaging apps, a party must disclose that in their list of inaccessible data sources. Inaccessible data sources likely to contain discoverable ESI shall be preserved until the parties reach an agreement on these sources.

**3.** **<u>Collection</u>**

Each party shall make best efforts to begin collection of potentially responsive ESI from the following data sources no later than 30 days of the entry of this ESI Order or the service of Requests for Production, whichever is earlier: (a) all custodians and noncustodial data sources identified in the party's ESI Disclosure and (b) all third-party data sources identified in the party's ESI disclosures that are within the party's possession, custody, or control; (c) all other ESI not identified in the party's ESI Disclosure that the party knows is relevant to the claims or defenses in this action. To the extent that any custodian identified in the party's ESI Disclosure has hardcopy documents with responsive information, those documents shall also be collected.

4. **Preservation**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

5. **Search Terms**

Parties may, but are not required to, utilize search terms in order to identify ESI that may be subject to production in discovery and filter out ESI that is not subject to discovery. To the extent that a party relies on the use of search terms, the following protocol shall be followed. The parties acknowledge that developing a final list of agreed search terms will be an iterative process, including evaluation of search terms proposed by both the responding and requesting parties. Moreover, the parties acknowledge that the agreement to use a certain search term does not negate a party's ability to review the documents for responsiveness to the document requests; the fact that a search term is present in a document does not automatically render that document responsive.

1. Proposed Search Terms. No later than 30 days of the entry of this ESI Order, or as otherwise agreed by the parties, a responding party intending to use search terms shall provide to the requesting party a list of proposed search terms to run against the collected ESI data. The requesting party may propose modifications to the proposed search terms and propose additional search terms. The requesting party and responding party shall then engage in meet and confers, with the first occurring within ten days of receiving the requesting party's proposed modifications, to discuss the proposed search terms and modifications, and attempt to reach an agreement for the search terms to be used by the responding party.

2. Disputed Terms.

If the responding party contends that a search term (or modification to one) proposed by the requesting party causes issues of privilege, relevance, overbreadth, or undue burden or costs, the responding party shall provide the following to the

requesting party at least 24 hours prior to a meet and confer intended to discuss that term: (a) a written explanation of the issues with the term/modification (separately for each term/modification); (b) a "hit report" from their discovery vendor showing the aggregate hits for each disputed term, the number of unique hits for each disputed term, and the total number of documents returned by the terms already agreed to by the parties; and (c) a description of the nature and type of irrelevant documents that the disputed term is returning.

In the event that the parties are unable following good faith efforts to resolve any dispute after conferring on disputed terms, the requesting party may request that random sampling be done. If the parties cannot agree to random sampling, the requesting party may file a motion requesting that the Court order random sampling. Such motions shall be heard on a shortened briefing schedule as follows: (a) the motion shall be filed 14 days prior to the hearing date; and (b) the response shall be filed 7 days prior to the hearing date. Reply briefs will not be permitted absent the Court's permission.

If, after engaging in the process described above, there remain search terms about which the parties cannot reach agreement, the responding party shall file a motion for a protective order with the Court.

The fact that the parties disagree regarding the application of certain search terms shall not be used as a reason to delay applying the parties' agreed terms, and reviewing or producing responsive documents from the agreed terms.

3. <u>Additional Terms for Good Cause</u>. Once a search term list is finalized (either through agreement of the parties or Court order) and all iterative searches for a custodian are complete, the requesting party may propose additional search terms for a responding party to consider, but the responding party will have no obligation to re-search the custodian's electronic data using different or additional search terms without agreement or a court order. The requesting party must show good cause for

any additional proposed search terms. If a responding party cannot meet any applicable deadlines to produce documents as a result of this provision, the parties will negotiate in good faith a reasonable timeline for production or seek an order from the Court.

4. <u>Search Terms Not Intended to Limit the Scope of Discovery</u>. The use of search terms is not intended to define the full extent of a party's obligation to search for and produce responsive ESI. At a minimum, parties must search for and produce the following ESI to the extent they are responsive and not privileged, even if they are not found by the application of search terms: (a) ESI known to the party containing responsive information; and (b) specific documents identified by a deposition witness.

**6.    Deduplication**

A party may produce a single copy of a responsive document and a party may deduplicate responsive ESI across custodians using MD5 or SHA1 Hash, or a similar method. A party may also de-duplicate "near-duplicate" email threads as follows: in an email thread, only the final-in-time document need be produced, if and only if all previous emails in the thread are contained within the final-in-time document. In addition, only a single copy of an email need be produced even where it was sent to multiple recipients. However, such de-duplication of email threads shall not apply to new email threads that branch off from an original email thread (*e.g.* the original thread is forwarded to a new group of recipients, or new content is introduced during an already-existing email thread). To the extent any de-duplication is applied to a document other than email, (a) such deduplication efforts may only be applied to documents that are identical in content and may not be applied to withhold production of non-identical versions of such documents (*e.g.*, earlier or later versions of documents, drafts, etc.), and (b) all custodians with that document shall be identified in the metadata provided with that document. Any documents containing

handwritten notes or markings would not be considered a duplicate of an electronic version and if responsive must be produced as a separate document.

**7. Production Formats**

The parties shall produce documents consistent with the following protocols:

1. <u>Production Format</u>. Productions shall be made consistent with commonly used technical standards (*e.g.*, TIFF images, load files, etc.) for producing documents in litigation. All documents shall be rendered text-searchable prior to production if technically possible. All documents shall be Bates stamped with a unique identifier. Documents produced in TIFF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

2. <u>OCR</u>. All Documents will be produced in a word searchable, text file format (".txt"), at the document level for all records. Such text files may be delivered as multipage ASCII or, where appropriate, Unicode text files and named after its corresponding Bates number. All records must include: (a) extracted text for all Documents, at the document level, wherein the text files must have page breaks that correspond to the pagination of the image file; and/or (b) Optical Character Recognition ("OCR") text, at the document level, for records where: (i) embedded or extracted text does not exist in the electronic version of the Document; and (ii) the Document originated in a hard-copy format. The producing Party shall be responsible for providing OCR for Documents without revealing the contents of any redacted material. The text files may be placed in an individual folder, from which the full path for each text file should correspond to its record in the .dat file and populated under the TEXT PATH field.

3. <u>Color</u>. Documents containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it

is necessary to see those markings in their original color to understand the meaning or content of the document, then the receiving party may, in good faith, request that the document or ESI item be produced in its original color format. Such a request will not be unreasonably denied by the producing party.

4. <u>Family Members</u>.  All family members to a responsive document (attachments to a responsive document, cover emails to a responsive document, or other attachments to the cover email of a responsive document) shall be produced, except for any document covered by an applicable privilege.  Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any responsive attachments to that Document are produced in the same production set and are identifiable as parent and child (except for privileged documents). The Parties shall make reasonable efforts to maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

5. <u>Confidentiality Designations</u>.  If a document or ESI item qualifies for confidential treatment pursuant to the terms of a protective order entered by the Court in this litigation, the designation shall be shown on the face of all TIFF images pertaining to such item/document, and in the metadata provided for the document/item.

6. <u>Metadata Fields</u>.  For each item of ESI, the Parties shall identify the Metadata as set forth in Appendix A, if available.  The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified in Appendix A for production.  The Parties are not obligated to populate manually any of these fields if such fields cannot be extracted from the ESI.  Nothing in this paragraph shall be construed to obligate a Party to (i) create new system-generated Metadata that is not already in existence at the time of collection of the ESI (i.e. exclusive of Bates Numbers, confidentiality

designations, and other post-collection tags), (ii) produce Metadata that implicates the attorney-client privilege or attorney work product, or (iii) produce Metadata that is protected from disclosure by statute or regulation.

7. <u>Production of Certain Files in Native Format</u>. All presentation-application files (*e.g.*, PowerPoint), spreadsheet-application files (*e.g.*, Excel), personal databases (*e.g.*, MS Access), and multimedia audio/video files shall be produced in native format. In addition to producing these files in native format, the producing party shall produce a single-page TIFF slip sheet indicating that a native item was produced, or in the case of presentation-application files, may choose to also produce numbered tiffs in addition to the native file. The corresponding load file shall include metadata linking to the native file for each native file that is produced. Filenames for documents produced in native format shall contain the document's Bates number and confidentiality designation.

Other than as specifically set forth above, a producing party ordinarily need not produce documents in native format. If a party would like a document produced in native format, and this order does not require the production of that document in its native format, the party making such a request shall bear the burden of showing good cause exists for the document to be produced in its native format.

8. <u>Production Media</u>. The producing party shall produce document images, natives where applicable, text files, load files and metadata via either secure file transfer site or on hard drives, CDs, DVDs or other mutually agreeable media ("Production Media"). Each piece of Production Media shall be assigned a volume name, production number or other unique identifying label corresponding to the identity of the producing party and the Bates Number ranges of the documents in that production (e.g., "ABC Production, ABC 0000123 - ABC 0000456"). Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production

-7-
STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS

Media, clearly identifying that it is a replacement and cross-reference the Bates Number range that is being replaced. All Production Media must be properly packaged to ensure safe shipping and handling in the case of hard drives, CDs, DVDs, or other physical media.

9. <u>Encryption and Chain of Custody</u>. The producing Party may encrypt all Production Data to the extent reasonably feasible. Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI. The producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media. The producing Party may ship encrypted media and/or data via FedEx or UPS and provide tracking numbers for all shipments to ensure proper chain of custody or deliver the production through a password protected FTP site.

10. <u>Rule 34</u>. Documents produced pursuant to this order shall be deemed to have been produced in the usual course of business under Federal Rule of Civil Procedure 34 (b)(2)(E).

**8. Documents Protected From Discovery**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

b) Communications involving trial counsel need not be placed on a privilege log.

**9. Privilege Logs**

Privilege logs shall be produced within thirty (30) days of a parties' initial document production, and no later than 60 days prior to the end of fact discovery. If

any documents are produced after that date, supplemental privilege logs shall be produced within ten (10) days of those productions.

Parties will provide a log of all documents withheld on the basis of privilege, work product protection, or other privilege. For electronic documents, each party may opt at its own discretion to create privilege logs using one of the following methods. For hard copy documents, each party shall create privilege logs using the standard privilege log.

Automated Log. An automated privilege log will be generated from the following metadata fields, to the extent they exist, as electronic metadata associated with the original electronic documents.

1. SUBJECT
2. FILE NAME
3. EMAIL SUBJECT
4. AUTHOR
5. SENDER/FROM
6. RECIPIENTS/TO
7. CC
8. BCC
9. SENT DATE TIME
10. RECEIVED DATE TIME
11. FILE CREATED DATE TIME
12. FILE LAST MODIFIED DATE TIME
13. BEG BATES
14. END BATES
15. BEG ATTACH BATES
16. END ATTACH BATES

      Additional fields to be populated manually and included on the Automated log:

      a. PRIVILEGE TYPE (AC, WP or other)

      b. REDACTED (a field indicating whether the document has been produced with redactions)

      The parties also agree that automated logs must include a narrative description of the basis for asserting privilege or work product protection. With respect to the SUBJECT OR FILENAME fields, the producing party may substitute a description of the communication where the content of these fields may reveal privileged information, but must indicate that the fields have been revised. Should the receiving party in good faith have reason to believe an entry on the Automated Log does not reflect a privileged document, it may request a Standard Log for that entry, to be produced within two weeks of the request, or within such other reasonable time as the parties may agree or the Court may order.

      Standard Log.  A standard privilege log will include these standard fields: beg bates; end bates; author/sender/from; recipients/to; cc; bcc; date; privilege type; redacted; and a description sufficient to identify the subject of the document and the basis for the privilege assertion. The privilege log fields for email strings will contain the information from the last-in-time email in the email string.  Parties shall also populate a field with all other participants identified on the face of the document not already captured in the last-in-time email of the email string.  Other participants need only be identified for the email strings which are withheld as entirely privileged.

      The Parties agree that the following categories of Documents and ESI are presumptively excluded from the privilege logs:

1.     Communications after February 1, 2021 exclusively between a producing Party (either defendant or plaintiff) and its litigation counsel, concerning this case.

2.      Work product created for this case by litigation counsel, or by an agent of litigation counsel other than a party to the case, after February 1, 2021.

3.      Communications regarding this case (i) sent solely between litigation counsel for the Parties, and/or (ii) sent solely between litigation counsel for the Parties and persons employed by or acting on behalf of such counsel.

## 10. Continuing Obligations

The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including any need to this ESI Order. Nothing in this order, or the subsequent designation of any search terms, shall operate to limit a party's obligations under the Federal Rules of Civil Procedure and applicable decisional authority with respect to discovery obligations other than the search for and review of potentially relevant ESI. Furthermore, nothing in this order shall operate to limit a party's obligations to produce responsive information which it has collected. Nor shall it limit the continuing production obligations of Rule 26(e) of the Federal Rules of Civil Procedure. This ESI Order does not address or resolve any other objection to the scope of the parties' respective discovery requests, and it does not prevent any party from undertaking searches of its own ESI for its own purposes at any time.

## 11. Modification

This ESI Order may be modified by a further stipulated order of the parties, as entered by the Court, or by the Court for good cause shown.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: August 23, 2021          LEADER BERKON COLAO & SILVERSTEIN LLP

By: */s/ Stephanie L. Gase*
    Bobbie R. Bailey
    Stephanie L. Gase (*pro hac vice*)
    Daniel A. Johnson (*pro hac vice*)
    8117 Preston Road, Suite 300
    Dallas, Texas 75225
    Telephone: (469) 482-5227
    Facsimile: (212) 486-3099
    Email: sgase@leaderberkon.com
    Email: bbailey@leaderberkon.com
    Email: djohnson@leaderberkon.com

*Attorneys for Plaintiffs*
*Creative Intellects Inc. and*
*Intellects Capital LLC*

Dated: August 23, 2021          THE ACADIANA LAW FIRM, LLC

By: */s/ Thomas Ainsworth Robichaux*
    Thomas Ainsworth Robichaux (*pro hac vice*)
    1317 Milan Street
    New Orleans, LA 70115
    Telephone: (504) 605-0610
    Facsimile: (504) 605-0620
    Email: thomasrobichauxlaw@gmail.com

    *AND*

    Kevin J. Grochow
    KUTAK ROCK LLP
    5 Park Plaza, Suite 1500
    Irvine, CA 92614
    Telephone: (949) 417-0999
    Facsimile: (949) 417-5394
    Email: kevin.grochow@kutakrock.com

*Attorneys for Defendants Patrick Haygood, Tracey Renee McKinney, Reservation Land Management, A.X.E., LLC, and Atlantic Cross Equipment, LLC*

*All signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

**IT IS SO ORDERED.**

Dated: August 24, 2021

_____
Alexander F. MacKinnon
U.S. Magistrate Judge